This case on the docket is 2-15-0417, between Fasteners and Supply Incorporated, Plants and Propellants, the Power Solutions Incorporated, All New Motors, Power Production, and Fabrication Machinery Incorporated. Defendants, please. Arguing on behalf of Plants and Propellants, Mr. Gregory J. Burr. Arguing on behalf of Defendants, please. Mr. Langdon, proceed to the mall stand. Mr. Burr. Thank you, Your Honor. You may proceed. Your Honor, I wanted to address the specific questions that were raised in the document that was sent to us regarding the three issues. In order to do that, hopefully as efficiently as possible, Your Honor, I have copies of the documents in the record that you might want to refer to as we go through. If I can hand it to the bailiff. I think we have one more, and I'll have to pick it up for you. These are copies of the documents? They're copies, Your Honor, of the various documents that are in the record, and they are cited there too, both on the pages and on the cover sheet. Thank you. Did you give a copy to counsel? If you can have mine, Your Honor, and I can just work off of what I've got. Counsel, do you have any objection to us reviewing these documents from the record? I have looked at them, Your Honor, but I'm not supposed to. Well, assuming they're from the record, I mean, you could just... They're from the record. Right. Thank you. I just acknowledge, Your Honor, that they are all textual records. May I proceed, Your Honor? You may. Regarding the first question that you raised was whether the exclusion from the definition of pure economic loss from damages a product causes to itself has any bearing on this case. The short answer is this, Your Honor, no. And the reason for it is twofold. If you go to tab one, it will show you what a spacer looks like. If you go to tab two, it will show you a race or a hub assembly that the spacer was incorporated into. We are not claiming damages at all for the spacer. We are claiming damages for the damage the spacer caused to the hub assembly and ultimately the engines. How does that argument comport with the Mormon economic loss doctrine in the Supreme Court case of Trans State Airlines v. Pratt & Whitney? As you know, Mormon prohibits recovery in a tort action for damages to the product itself. In the Pratt & Whitney case, there was an incident where plaintiffs sued for damages for the airframe and the engine. The Supreme Court held that it was a single product such that the damage to the airframe resulting from failure of the engine was not recoverable in a tort action. It seems to be very similar here. The end users bought a forklift. They bought an engine. They didn't buy a spacer. So how do you distinguish your case from the Pratt & Whitney case? I think I distinguish it in two ways. Under Mormon, the overarching one, the damage was great to the grain bin, the entire grain bin. In this, it is a component part of the grain bin. And I understand that. Exactly. As was the airplane part in Pratt & Whitney. Understood, Your Honor. And all I can tell you is I think it was decided wrongly in this sense. Now, this is the Illinois Supreme Court you're talking about. Are you asking us to overrule the Supreme Court? Both Mormon and the other one. I understand, Your Honor. But all I can say is that to the specific question that was asked to us, we are not seeking damage for the part distributed by the component part maker. We are seeking damages for the damage that part caused to basically a forklift. And if you so see, I'm not going to argue it too much. If that's what the court decides, that's what the court decides. But I needed to answer the question, and I'm trying to do it to the best of my ability. Okay. Fair enough. Going on to the second question regarding whether there are any admissions in the record concerning the quantity of goods the alleged oral contract pertained to. If you go to tabs, I believe they are eight and nine. Those are the allegations in the complaint regarding the number of spacers that were sold. Paragraphs 14 and 15. And if you go to nine, you will see that FMS, it's the excerpt from that page, admitted that they produced and sold us 1,500 spacers, at least in that instance, and they were paid for it. So there is an admission in their answers that we had a contract. It was for spacers. We paid them for them. They gave them to us. And all the elements of the contract were met. So in essence, are you saying the contract was executed, was completed? Correct. And they should have taken it out of the statute of frauds. Is that your argument? Absolutely, Judge. At least as to that number of spacers, that specific quantity. We can get to that issue, Your Honor, if you want to address it. But what I would suggest also to you is not only did they admit it in their answer, but if you go to twins purchase orders at tab three and tab five, there are two 1,250-part purchase orders. They identified the spacer by the NACL part number. If you go to tabs four and six, you'll see the responsive invoices from FMS, and the second one is marked paid in full. So when we get to the argument about the UCC and all, Your Honor, we have proven that the merchant's exception should apply. And you have the admission that there was a contract from their answer. So regarding whether or not, forgive me, whether there were any admissions in the record concerning the quantity of goods in the alleged oral argument, you have their answer regarding the oral argument, or excuse me, the oral agreement originally, and it was confirmed by the subsequent POs and invoices. So I hope that answers that question. So you're saying at the very least there's a question of fact here, given the admissions of certain parts of it, to get past summary judgment. Is that what you're saying? That was raised in the trial court, and forgive me, I did not do as good of a job persuading them, but hopefully I can persuade you folks. But yes, that's the argument. As to the third one, Your Honor. Well, first of all, while you stall the admissions, was your argument on admissions first raised in your motion to reconsider? It was, if you look at the oral argument at the summary judgment stage, the documents regarding the admissions were attached by FMS to their response, which are those documents. I am not going to mislead the court. We didn't spend a whole lot of time on it, and I believe that we did briefly at least address it. But no, it was not raised, or the facts were at least before the trial court, both for the admissions and for the invoices and the purchase orders for these products. We go on to number three. For the purpose of the merchant's exception, the writings of the record were sufficient against the sender. I've already shown you, I believe, the documents that establish that. You've got our two purchase orders, their two invoices coming back. They didn't reject them. They're marked paid. We paid them. We got the washers, put the washers under the fan mount assemblies for the document, and they began to immediately degrade because the spacers were simply the wrong length. Is a purchase order only an offer? I mean, a purchase order is a contract. Well, Your Honor, much like the trial court judge, I am not an expert in the UCC. But what I can tell you is that we sent a purchase order, and we got confirmation in terms of their invoice. It specifically identified the number, the part number, and everything else. So I think that's a legal conclusion that I will leave to the bench to decide, but I think you have all the information to address that and find that between the purchase order and the corresponding invoice, there was a contract. As I said, Judge, It's certainly enough to take it out of the statute of fraud. That is our argument, yes. As I said, Mr. Culley got the parts for the company, and FMS got a check for the product. Well, it may take it out of the statute of frauds on the issue of conduct and taking an oral contract out of the statute of frauds, but the question specifically addressed in our order, or asked in our order, had to do with whether or not this is a written contract. It forms the basis of a written contract where the statute of frauds is fulfilled. I think it does, Judge, and maybe I was imprecise in my pleading. There was an oral agreement before the exchange of the purchase orders and the invoice. So if I've misled the court, I apologize. But there was an agreement. It took a couple months to get the product manufactured and everything else. When it was ready to be delivered, the formal purchase order went out. The invoice, basically copying the purchase order's terms and everything else, came back. So, again, Your Honor, I hope I've addressed your question. I'm not trying to dodge it, but if there's something I'm not addressing, please let me know. So those take care of the three points that I wanted to raise, or you wanted me to address. I do have a couple other points that I would like to address, which is simply this. Regarding the proposed amended pleading, the first time our plea was challenged was at summary judgment. And as I lay out in briefs, it's a statute of frauds claim. They're supposed to plead it as an affirmative defense. You're supposed to bring a 2619 motion, 7, before you answer to address these questions so we can solve it real early on. That was not done. And my point is simply on that as this, Your Honor. The only item that they raised regarding arguing that allowing a pleading to be amended at this stage was the prejudice of being in the case for three years. I suggest to the bench this. They've got nobody to blame but themselves for that. If they had raised the affirmative defense, if they had brought the 26197 motion when it was supposed to be brought, the one element of quote-unquote prejudice that they're alleging would have been addressed at that point in time. So when did they first raise the statute of frauds defense? That motion for summary judgment? After discovery was closed. I don't think it was completely closed. There's certainly actually a time going between us and PSI. I don't want to mislead you. I think discovery as to me was closed and not to the other parties. If you give me one second with my notes, please. The only other thing I'd like to bring up is simply this. Ed Orellard in the motion for summary judgment, the trial judge, had indicated that he was not very well versed in the UCC and didn't show up on his law division call all the time. And at that point in time, we did suggest that we should take more time to address it, but my suggestion was not followed up. He didn't have to. He just suggested a bunch of this. The trial judge in this matter, I think, gets it right 85%, 90% of the time. If you read the oral argument, you can see that he's not well versed, and he admitted to it. And I just suggested as bench that he should allow us to replete it as we could. There's no prejudice. And by doing so, I believe we can meet all the requirements for both. Maybe not the products count, but I didn't want to waive the products count. But getting back to it, I think the judge knew he was a little bit out of his wheelhouse, but decided to case the UCC account at that time. He's an excellent judge. I have no criticism of him. I just think he got it. I think you folks get it right 85%, 90% of the time. I think he just got that one wrong. May I say that again? You said, I think you folks get it right 85% to 90% of the time. Isn't our banning average much higher than that? It could be. And if you were baseball players, you'd probably be slightly better compensated. I don't control it. Anything else? No. I want to thank you for your time. Thank you, counsel. You will have time for rebuttal argument. Mr. Moore. May we please report? May we proceed? I would like to start by addressing these three questions. I think that's probably efficient. I have some other issues that I want to discuss later on. The issue about exclusion from the definition of pure economic loss and damages is relevant to this case as a whole, but not relevant to plaintiffs' claims in their complaint, which were for loss of profits from cancellation of their contract with PSI. Now, they did at that time also claim right to indemnification, but at a point in time where there was no claim against Twin Fasteners by anyone for any damages of any kind. Borman controls. Didn't the record show someone was arguing about a $300,000 claim against Twin Fasteners, or did that come later? I believe that it's probably the current claim of PSI against Twin Fasteners, which was filed about six months after the original complaint. Your Honor, Borman controls count three. Without respect to whether there's a question of fact, which we discussed earlier, about whether there was a breach of contract, but Borman and Tran states control. As far as their claim for economic loss in this case, is it not? It's a claim for economic loss, and it's quite clear. The claim is that the spacers caused the engines in the forklift trucks, the forklifts, to fail. That, I think, is on all fours with Borman and his progeny, Tran states. Since we're talking on all fours, let's talk about count four. Count four was pleaded as a breach of oral contract. Right. Is there not an oral contract here? There is an oral contract. I think, well, our pleading admits it. Counsel just recited two specific paragraphs. Paragraphs 14 and 15 of our answer agree that an oral agreement, an order was placed for 1,500 spacers for a certain $1.85, I believe, and that that was fulfilled. So the question, though, is, and I'm going to put aside for now the question that's dashed in front because it's iffy here, given a couple exceptions that we can discuss in a second. But what isn't clear at all is what were the terms of the alleged agreement that we are claimed to have breached. And I have to take issue with counsel here. There's no doubt that amount and price and some concept of timing were clearly part of the agreement. But what isn't clear is if you look at the documents that counsel cited, you will see that on the invoice from my client to Twin Fasteners, that would be under tab six, the item and description are simply copied from the purchase order itself. It has the same information. It doesn't equate to having our client been given the tolerances for this part or the drawing for this part because there is no doubt in the record that the schematic drawing was not provided to our client until January of 2013 when some failures began to be noticed. Aren't we sliding into questions of fact here? You know, I mean, you take issue with a number of the factual issues that counsel raised at the beginning of his brief. And as it relates to many of the issues, I understand that argument. But when we start talking about the breach of the contract and we start talking about the specs on this contract, aren't we sliding into questions of fact? We might be, Your Honor, but actually this pertains to whether the writings in the record were sufficient against the sender. In this case, B is. That's to create an oral contract off of these documents is what you're talking about. Yes. Okay. I'm sorry. That's exactly what I meant. So let's see. We talked about question one. I think I've addressed that. Were there admissions in the record regarding the quantity? Yes, there are. And I just addressed those. Do you still maintain that the statute of fraud is a bar to the action here? The merchant exception may well apply. I will concede that. What I will tell you is I think from the record that the question of whether we waived it by not asserting an affirmative defense was never asserted by plaintiff until they filed their opposition to the motion for summary judgment. So that issue was not there, and it doesn't also address the question of whether it was any evidence of breach of the terms of the oral agreement that we just agreed. I just addressed it. Well, the question that we're asking in this order to some degree had to do with subparagraph 3B of 201, and that's if a party against whom enforcement is sought admits in its pleading that there's a contract, the contract's enforceable. The statute of frauds doesn't apply, but it's not enforceable beyond the quantity of goods admitted. I agree that. So you're agreeing that this oral contract is enforceable against you as it relates to what you've admitted in the pleading? Yes, sir. I do. I do. It doesn't go beyond that. That's precisely it. So was summary judgment improperly granted then in that case? No, because the court wrestled with the question of whether given that initial executive contract, whether there was any additional agreement on terms that we had agreed to. And that, again, goes to whether we had been provided with the specifications and the tolerance for this particular part, which the record is very clear, we didn't have that information until January of 2013, well after these purses were issued. Is there something in the record, though, that you received exemplars? We received one or more exemplars, and the agreement was that Mr. Ronaldo would use micrometer calipers to measure the dimensions. Wasn't told what the tolerances were, wasn't told what the part was for, frankly, or what it was going to go into, and he wasn't given a copy of the schematic drawing. So, yes, that was how it was done. Did the parts that were eventually produced for my client by Chicago Tube & Iron and the other Chicago suppliers that we went through, did they turn out to not be within the tolerance? Yes, but we had no reason to know that at the time, none, because we weren't given the drawing that had the tolerance between 13.11 and 13.19 millimeters. If I may. But there's an allegation that the ones that were produced were not the same as the exemplars, correct? Yes, I think that's true. On the other hand, and that's one of the things we raise in our motion-preserving judgment, we didn't make these parts. We got them from suppliers to suppliers. Which is why we raised 2-612, not 2-621, the seller's exception, where we don't make it, we buy it from somebody else, and therefore we should be entitled to dismiss from the case when we identify the actual manufacturer of the part. And that was part of our motion-preserving judgment. How would plaintiffs seek redress from the supplier? Suitable. I mean, they're entities that exist and presumably are able to satisfy a judgment. Privity of country? Well, through a chain, yes, Your Honor. Yes, Your Honor. I wanted to address one more point. I think probably my time is starting to wane a little bit. I wanted to address the point about plaintiff's motion to file an amended complaint, which happened after the granting of the motion for summary judgment. The complaint that was tendered was analyzed by the court under the Loyola factors, and one of them was, would it curate? Well, Mr. Tully, in his deposition, it's in the record, had denied that there was any written contract between Twin and that record machine. How can you have, how can that curate anything when there's an admission in the record totally to the contract? Prejudice, five years of litigation had passed, so one can argue that. But the other thing was, this motion to file an amended complaint was brought in response to our motion for summary judgment and wasn't timely. Was that in response to your statute of frauds defense or no? No, it was not. So, after our summary judgment, the touchstone for whether a pleading can be amended after judgment is whether it can conform to the proofs. Well, this pleading, attempted pleading, in no manner could be said to attempt to conform to the proofs. Therefore, I suggest to you that the trial court, after careful analysis, properly denied that motion to add a count post-judgment and rule correctly. You said that Mr. Culley admitted that there was no written contract. That's correct. But in your brief at pages 13 and 14, you talk about you cite to a question and answer that only relates to oral agreements. That's correct in the brief, but also in the record. I don't have a citation off the top of my head, but he did also agree that there was no written contract between Twin and Fabricated Machine. When we look at oral agreements, though, his answer to that question, juxtaposed to your admission that there was an oral agreement, I mean, that at most is a question of fact. Again, you have your judicial admission versus his sworn testimony. That's correct, although, again, our admission was limited to $1,500 of these spacers at $1.85 each that occurred back in 2006. When we're talking about prejudice and motions to amend, doesn't it kind of cut both ways? Why wasn't the statute of frauds raised earlier in these proceedings and raised pursuant to an affirmative defense as is really called for? It's kind of different. I mean, it's not entirely something that we haven't seen before, but it's certainly out of the ordinary when it's brought into some of the judgmental action. And that's the first anybody hears of it. I can't disagree with that. But the question of whether we waived it by not bringing it earlier was waived by plaintiff by not raising it in response to a motion for a summary judgment because it wasn't raised at that point in time when that issue was pleaded in a covered motion. You're saying the motion to amend was not made in response to that? Correct. I am. This Court knows this Court can affirm a grand summary judgment. On any grounds in the record, I respectfully suggest to you that there are several grounds on which the motion can be upheld by you, and I request that you should do so. Thank you very much. Thank you. Thank you. Mr. Byrd, rebuttal argument? Thank you, Your Honor. Very briefly regarding PSI, Judge, we did have to file our complaint first because PSI had withheld about $500,000 in invoices from my client. So in suing FMS at the same time, we were obviously anticipating that we would get the counterclaim from PSI regarding the damages to the NACO engines, which Your Honor is absolutely right, it's approximately $327,000. So if the timing of this looks a little choppy and not perfect, there's a reason for it. Maybe not the best reason in the world, but that I hope explains at least procedurally how we ended up with the claim being raised before we actually got the counterclaim from PSI. Secondly, regarding the spacer in question, in that document, regardless of what counsel has said about when and where and everything else they asked for, didn't ask for, got the chart and drawing, didn't get the chart and drawing, which I agree, there are certainly questions of fact, there's no doubt that their invoice identifies the very part that has a corresponding drawing to it. Did they get it? Not from us. Did they have it? I don't know. But these are the questions, Your Honor, regarding those issues you were raising about tolerances, whether it's supposed to be phosphated or not, camfered edges and all the rest. Their own invoice identifies the NACO part. They knew where it was going. It was going into a NACO forklift. They knew it was going to PSI. His office is right across the street from PSI. So those issues are really not issues. Whether they had it, Your Honor, at the time they fabricated this or bought them, I don't know. I can tell you this much, though. These are metric measurements. The invoices they got back from Chicago Tube and Iron, I can't find it, but I can tell you it's in the record. On those invoices, it had the English measurement, half an inch. And what we're saying is they changed the design when they subcontracted out from the metric size to a half inch, and that's what caused the damage to the engines. Your next question is, well, Bird, didn't you get that information on their invoices? No. The invoice that was sent to Mr. Tully said this part, this size, metric measurements. The invoices from Chicago Tube and the other supplier, it's half an inch English. And what I'm telling you is simply this. They changed the design of the spacer by changing the size. Who's they? They would be FMS. Wouldn't be their supplier? Couldn't go after them, Judge, because you know why? They told them that they were providing them with half-inch spacers. That's what the suppliers gave to FMS. And then FMS took those spacers and said, here they are. They're the NAPO washer size. This is what you want to be able to argue to the trial court. I beg your pardon? This is what you want to be able to argue to the trial court should we choose to reverse summary judgment. Absolutely right. And as I said, Judge, had Mr. Tully, if they had included the information from Chicago Tube and Central Steel, I think it was, on the invoice that what we're providing you with is a half-inch English measurement spacer. Mr. Tully has been in the industry for 30 years. It's his whole life. With all due respect, I'm pretty darn sure he would have recognized that and said, what am I doing here? It's not even in the right measurement or in the right, it's not metric, it's English. So I just wanted to bring that to the court's attention. The Loyola factors, as you're well aware. You have the power to allow amended pleading. Then, now, after judgment, if there's good reason and if we can cure it. I suggested at bench that our proposed pleading, which is not perfect, but I think it gets the point across as to what we can do, if we were allowed to file an amended complaint, and I think it would cure the issues. As I said, Your Honors, the first time this was ever challenged was at summary judgment. One of you alluded to, why did you wait three years? Mr. Tully and I would not be here before you today if they had either filed the 26197 motion three years ago, we would have addressed it then, or if they had filed the affirmative defense pleading, I noticed that that's the route they're going to go. I can't put it any more plainly, Your Honors. Well, maybe you touched on this a little bit, but why doesn't the seller's exception to the statute of frauds apply? I beg your pardon? Why doesn't the seller's exception apply? Why does it? Why doesn't it? Well, for one thing, they changed the design. I don't know if I can put it any plainer. And, Your Honor, it's admitted to half an inch. I will respectfully tell the court it's 12.7 millimeters. The range for the metric, 13.11 through, I think, 13.18. They used to have it numberized. They don't anymore. They changed it, Judge. They didn't give us what we ordered, what we wanted. And I respectfully follow up on your questions. There are questions of fact regarding those issues, if nothing else. Thank you, counsel. Thank you very much, Your Honors. The court would thank both attorneys for their arguments here today. The case will be taken under advisement. The decision is under the due course. Court is adjourned.